## WADE *vs.* THE STATE OF GEORGIA.

1. The verdict is supported by the evidence.

2. It was not contrary to the charge.

3. Where an isolated portion of the charge taken alone might be error, but is not so when taken in connection with the context, a new trial will not be granted on account of it.

4. *Alibi* as a defense involves the impossibility of the prisoner's presence at the scene of the offense, at the time of its commission; and the range of the evidence, in respect to time and place, must be such as reasonably to exclude the possibility of such presence.

5. Counsel should not be allowed to argue facts not appearing from the testimony.

6. While it may have been error for the court to tell the jury in a criminal case that the law as read to them by counsel for the state and defense was the law of Georgia, it is impossible for this court to grant a new trial on that ground, when it does not appear what was so read. Especially will this not work a reversal where both sides admit that the killing was murder, and the sole question is whether defendant committed the act.

6. There is no law which prevents a bailiff from being a witness, and still retiring with the jury on a temporary absence from the court-room, even though he may have been sworn and put under the rule.

8. This was not insisted on.

9. Testimony as to the measurement of a track is admissible without producing the measure itself in open court.

10. This was not insisted on.

11. On a trial for murder, it was not competent to show a conversa-tion between the deceased and another, in which the deceased re-lated that he had had a difficulty with a third party, not the prisoner, in which violent language had been used.

Criminal law.   New trial.   Charge of Court.   *Alibi.*
Practice in the Superior Court.   Evidence.   Before Judge
WRIGHT.   Baker Superior Court.   May Term, 1880.

To the report contained in the decision it is only neces-
sary to add the following:   Wade was indicted for the
murder of one J. L. Ready.   One defense relied on was
*alibi.*   He was found guilty, and the jury recommended
that he be imprisoned for life.   He moved for a new trial,
which was refused, and he excepted.

A. L. HAWES;  H. C. SHEFFIELD;  H. MORGAN, for
plaintiff in error.

R. N. ELY, attorney-general;  W. O. FLEMING, solicitor-
general, by Z. D. HARRISON, for the state.

CRAWFORD, Justice.

The plaintiff in error having his motion for a new trial
overruled, seeks a reversal of that judgment.

1. Because the verdict was contrary to evidence.   There
can be no better ground for a reversal than this, and we
proceed to its consideration.   The testimony shows that
Wade said in *January* before the killing in *April,* that he
wished Ready would die.   They had a difficulty about
two weeks before Ready was killed.   He said to another
witness a few days before the killing, that Ready would
be found dead in his field some day, and nobody would
know who killed him, and this he repeated about ten
o'clock of the same day on which he was killed.   About
one hour and a half by sun he was seen to come out of
his own house with what the witness took to be a gun,
and going in the direction of Ready, and when he discov-
ered the witness, appeared to want to hide it; he had
also said to this witness that he would kill Ready if he
fooled with him.   About sun-down of that same evening
Ready *was killed in his field and nobody did know* who did
it.   He was, however, killed with a rifle ball, and Wade

had borrowed, and had in his possession, a rifle belonging to Mr. Jeffries. The patching with which a rifle was loaded was found near the fence where the assailant fired. A rifle was seen at Wade's house the next morning after the killing with the fresh marks of burnt powder and smoke around the tube. Wade lived two and a half or three miles from Ready, yet he went on the night of the murder to the coroner's, and wanted him to go that night and hold the inquest; was *anxious* that it should be done. After the inquest was over, an examination by several persons took place of the locality from whence the shooting was said to have been done, by a witness who was at work with the deceased in the field when he was shot. There they found the tracks of a man, which, upon measurement, in length and width, corresponded with Wade's. There was a half sole or patch on one shoe with a hole worn in it, which left a raised place in the dirt where the track was made. Wade's shoe had such a half sole with just such a hole in it. These tracks were found in the fence corner from whence the gun was fired, and they were followed for a mile and a half towards Wade's house. When these tracks were being measured Wade was present; each man submitted to a measurement of his foot without trepidation, but when Wade's was measured he turned pale and trembled.

With this testimony before the jury we do not think that the verdict was contrary to evidence.

2. Because the jury found against this charge of the court: "If the state has shown you by the proof a chain of circumstances that point so directly to the man's guilt as to satisfy your minds, beyond a reasonable doubt, and you can't reasonably account under the evidence for the entire transaction upon any other reasonable hypothesis than that the man did the killing, then your verdict will be, 'We, the jury, find the defendant guilty.'"

This ground in the motion simply challenges in another form the sufficiency of the testimony to justify a convic-

tion. No objection is made to the charge itself, and the jury, by their verdict, say that under the evidence they can't account upon any other reasonable hypothesis for the killing of the deceased than that defendant was the guilty party.

3. For error in the following charge: "That when a number of witnesses testify to the same transaction, and there is a difference (an immaterial difference only) as to the main point in issue, it is rather an evidence of strength than weakness in the testimony for discrediting it."

Had this been all that the judge said in this connection, it might be subject to the criticisms of counsel made in the argument. But it was only a part of the sentence, and the judge adds, "A story told by two or three witnesses exactly word for word, and letter for letter, when human reason and human experience is applied to it, presents a suspicious phase." He makes further illustration qualifying and explaining his exact meaning, and we think committed no error.

4. Because counsel for the state read to the jury the following principle; "*Alibi* as a defense, involves the impossibility of the prisoner's presence at the scene of the offense, at the time of its commission; and the range of the evidence, in respect to time and place, must be such as reasonably to exclude the possibility of such presence." The judge charged the jury that this was the law of Georgia, and we reaffirm it as having been held in the case of *Johnson vs. The State*, 59 *Ga.*, 142.

5. That the court erred in refusing to allow counsel for the defendant to argue certain material facts to the jury, which the state failed to prove, and which the solicitor-general in his opening speech stated that he expected to prove by Dr. Hand and Mrs. Bailey.

To have allowed argument on material facts not in the testimony, either by counsel for the state or the defendant, would have been error.

6. In that the court erred in charging the jury: "The law as read to you from the books upon the table, both by defendant's and state's counsel is the law of the state of Georgia. I have charged you at length upon this point, they read you the law, and it was the law upon the points upon which they read it."

There may have been error in this charge, but it is not made to appear, because what the books contained, or what law was read to the jury, is not set out, and it is impossible for us to know whether it was the law of Georgia or not. Besides, it was admitted on the trial by counsel on both sides, that the killing was murder, and the case turned entirely upon who committed the act.

7. "Because James Irvin, a bailiff, being a prominent witness for the state, retired with the jury (upon a call of nature) as jury bailiff, and this too after he had been sworn with other witnesses, and the court had been requested to keep the witnesses separate."

No law was produced to us declaring that a bailiff might not be a witness in a case, and still retire with the jury upon a temporary absence from the court-room, even though he may have been sworn and "put under the rule."

8. This was not insisted upon.

9. Because the court erred in admitting the testimony as to measuring the tracks, over the objection of defendant's counsel, upon the ground that the measure itself was not produced.

It is competent to testify as to the measurement of a track without producing the measure itself in open court.

10. Was not insisted on.

11. That the court refused to allow counsel for defendant to prove a conversation between the deceased and the witness Guye, to the effect that the deceased had had a difficulty with a negro on the place about driving his wagon over the negro's cotton, who had requested him to desist, and Ready replied, "G—d d—n you, I will

give you a load of buck-shot, that's the way I will dispose of you," and the negro replied, "I will be there when you do it."

We think that this testimony was clearly inadmissible under all the rules of evidence. It was but hearsay at best. The dying declarations of one are admissible under the well defined rules of law, and so may the sayings of one when they constitute a part of the *res gestae*, but a conversation such as this falls within none of the rules of law making it admissible.

Judgment affirmed.