28806. JACKSON v. HOPPER.

HALL, Justice.

Tried in 1971 on three indictments, Jackson was convicted of murder, attempted rape and aggravated assault. The conviction was affirmed by this court on direct appeal, *Jackson v. State,* 229 Ga. 191 (190 SE2d 530) but his death sentence was overturned by the United States Supreme Court. On remand this court entered a life sentence on the murder conviction. *Jackson v. State,* 230 Ga. 181 (195 SE2d 921). Jackson then brought this petition for habeas corpus on which he received an evidentiary hearing in Tattnall County on July 25, 1973.

Following the hearing his petition was found without merit and he was remanded to custody. He appeals, filing a pro se brief. No brief has been filed by the state.

On the six issues presented, numbers 1 and 6 were addressed in some detail by the Tattnall Superior Court in its written opinion.

1. Jackson claims denial of his rights to due process, equal protection, and effective assistance of counsel through the trial court's "firing" his attorney "because the attorney was doing all he could to represent his client." The trial transcript, however, reveals no "firing" of either of the two attorneys appointed to represent him, and the record of the appeal in this court shows the names of both attorneys on the notice of appeal and on the brief for Jackson, and further shows that oral argument was made in this court on Jackson's behalf. For this reason and for the additional reasons stated by the Tattnall Superior Court in its opinion and order below, there is no merit in this contention.

Raising on this appeal a new issue which he did not raise below, Jackson urges that he was denied the effective assistance of counsel because his lead counsel, Mr. Rutledge, was denied a continuance sought on grounds that the pressure of other litigation had shortened his time for preparation for Jackson's defense. The transcript of this motion hearing reveals that Mr. Rutledge acknowledged that the time provided him had not been unduly short, that he had later been assisted by the appointment of an additional attorney, and that most of the other matters in which he had been involved had been "voluntarily" assumed and had not been appointed cases. Nonetheless he stated that he felt more time was required for a proper defense to a case involving so many charges.

Whether a continuance should be granted for lack of preparation lies within the discretion of the trial court. *Evans Theatre Corp. v. Slaton,* 227 Ga. 377, 383 (180 SE2d 712); *Bradley v. Sherwin,* 110 Ga. App. 632, 633 (139 SE2d 512). Here, Jackson was arrested October 17, 1970, and was not tried until May 31, 1971. Though the record does not reflect the date of Mr. Rutledge's appointment, he stated to the court at the motion hearing that Mr. Jones

had been appointed to assist him on March 9, 1971. Therefore from March 9, 1971 to May 31, 1971, the first day of trial, there were two attorneys assigned to Jackson's defense, without taking into consideration the prior time of Rutledge's sole representation. Mr. Rutledge did not state to the court that any witness he desired to call was unavailable for trial. At trial following the denial of the continuance there were no witnesses for the defense; Jackson made an unsworn exculpatory statement; his attorneys claimed the final argument to the jury. On these facts we cannot say the court abused its discretion in refusing a continuance. See *Evans Theatre Corp. v. Slaton,* supra (one week held sufficient where defendant introduced no evidence). This contention is without merit.

2, 3, 4. The evidence authorized Jackson's convictions, and his allegation that perjury appears on the face of the record is incorrect. There is no merit in these enumerations.

5. Jackson claims denial of his constitutional rights flowing from the fact that the jury which tried him was all white whereas he is a Negro, and the jury was shorn on voir dire of all those potential jurors who stated an unalterable opposition to the death penalty, thereby leaving jurors who not only favored the death penalty but also were, he alleges, more prone to return a guilty verdict.

The record does not reflect the race of the jurors, nor does it reveal any challenge raised at any stage of the proceeding below to the manner in which the jurors were selected with reference to race nor to the racial composition of the pool from which they were drawn. Therefore, we have here no challenge to the array, but only a present challenge directed to the alleged fact of a white jury. Taking Jackson's assertion as true and assuming that all 12 jurors were white, this fact alone argues no deprivation of his constitutional rights. The constitutional prohibition against jury discrimination does not guarantee that any Negro shall sit on any particular jury, even though the defendant be Negro.

Jackson appears to claim that the prosecutor struck all black potential jurors for his particular trial. See Code

§ 59-805. If he did so, no constitutional principle was thereby offended. "The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it." Swain v. Alabama, 380 U. S. 202, 222 (85 SC 824, 13 LE2d 759).

Turning to Jackson's second point on jury selection, the disqualification of all jurors who stated on voir dire that under no circumstances could they return a sentence of death, was entirely in keeping with Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776). See generally, Comment, 1968 Duke L. J. 283 (preceding Witherspoon). The argument that jurors to whom a death sentence is acceptable are also more guilt-prone, though it is sometimes raised in scholastic circles (see Oberer, Does Disqualification of Jurors for Scruples Against Capital Punishment Constitute Denial of Fair Trial on Issue of Guilt?, 39 Tex L. Rev. 545 (1961)) has not yet to our knowledge received any judicial acceptance and was specifically rejected by the United States Supreme Court in Witherspoon, 291 U. S. at 517.

Jackson's allegations of jury discrimination are thus without merit.

6. The sixth enumeration of error, insofar as it alleged that the sheriff, a witness in the case, entered the jury room with soft drinks during their deliberation and stayed 10 minutes, is without merit for the reason stated by the court below. See *Daniel v. State,* 187 Ga. 411, 414 (1 SE2d 6); *Wade v. State,* 65 Ga. 756, 760.

The additional portion of this enumeration complains of the trial court's dispersing the jury for the night, with a proper admonition, rather than keeping them locked up in this capital case. This contention was raised by Jackson on his appeal to this court, 229 Ga. 191, and we decided the point against him then, finding that by his silence Jackson's attorney waived any objection to

the jury's dispersal. We adhere to this decision and find this portion of the enumeration without merit.

The allegations of the petition being without merit, the court below correctly remanded Jackson to custody. *Judgment affirmed. All the Justices concur.*

SUBMITTED APRIL 12, 1974 — DECIDED JUNE 19, 1974.

D. W. Jackson, *pro se.*
*Arthur K. Bolton, Attorney General,* for appellee.