**UNITED STATES of America**

v.

**John Thomas JOHNSON.**

**Crim. No. 74-192.**

United States District Court,
W. D. Pennsylvania.

Dec. 30, 1974.

---

James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for Government.

George E. Schumacher, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

The defendant, John Thomas Johnson, was convicted in a jury trial on charges of armed robbery and assault. He now moves for a new trial alleging seven grounds for error. We think the motion should be denied. The co-defendant, Reuben Sumpter, was shown to be mentally incompetent and unable to stand trial.

Defendant first asserts that the trial court erred in overruling his challenge to the jury array. Defendant objected "to the jury on the ground that only two members of the negro race were included on the panel, and no members of the negro race were included as members of the jury who tried the case."

 Such a challenge to a particular jury because it consisted only of white persons is without merit unless it can be shown that this district's jury selection system fails to produce juries from a fair cross section of the community.[1] A defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his

1. 28 U.S.C. § 1861 in part provides:
"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."

race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. Swain v. Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 13 L. Ed.2d 759 (1965); United States v. Dorsey, 462 F.2d 361, 362 (3rd Cir.), cert. denied, 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972). What an accused is entitled to demand, under the Constitution, is that in the empaneling of the petit jury there shall be no purposeful or deliberate systematic exclusion of qualified persons on account of race. *Swain, supra* 380 U.S. at 203–204, 85 S.Ct. 824; Avery v. Georgia, 345 U. S. 559, 561, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 85 L.Ed. 84 (1940); Virginia v. Rives, 100 U.S. 313, 322–323, 25 L.Ed. 667 (1879); Strauder v. West Virginia, 100 U.S. 303, 308, 25 L.Ed. 664 (1879).

■■ But purposeful discrimination may not be assumed or merely asserted. An allegation of discrimination because of race cannot be established simply by a showing that no one of the same race as the defendant was on the petit jury that tried the accused. *Swain, supra* 380 U.S. at 205, 85 S.Ct. 824; Martin v. Texas, 200 U.S. 316, 321, 26 S.Ct. 338, 50 L.Ed. 497 (1906). Purposeful or deliberate discrimination must be proved. In this case, the defendant has not shown any purposeful discrimination, nor has he shown that the local jury selection system fails to choose juries from a fair cross section of the community. In fact, the same jury selection system (The Jury Selection Plan of the Western District of Pennsylvania (Pittsburgh Division)) was recently upheld by the Court of Appeals as being in full conformity with the Jury Selection and Service Act of 1968 (28 U.S.C. § 1861 et seq.). United States v. Lewis, 472 F.2d 252 (3rd Cir. 1973). There was no error in overruling the defendant's objection to the array of jurors.

■ The defendant's second assertion of error is the denial of his motion for judgment of acquittal. A review of the testimony and exhibits indicates that there was overwhelming evidence, albeit circumstantial, of the defendant's guilt.

The prosecution presented witnesses who testified that at 9:30 a. m. on June 18, 1974, two armed black men entered the Mellon Bank in Lower Burrell. Their facial features were obscured. The first man carried a revolver and a brown shopping bag and wore a short jacket. The second man carried a sawed off shotgun and wore a long dark coat. This testimony was corroborated by bank photographs of the robbery. The first man ordered the tellers to fill up the bag with money and the two robbers then fled from the bank on foot with $3,997.50 in cash. Moments later, the bank's assistant manager ran out to his car to pursue the robbers. He testified that as he drove down the highway he saw two individuals dressed in the same manner as the robbers crossing a road behind the bank and heading into a wooded area.

A woman who was walking through those woods that morning on her way toward the shopping center where the bank is located testified that she passed two men hurrying along the path in the opposite direction. She spoke briefly about the weather to the second man who was wearing a long dark coat. At the trial, this woman identified the defendant as the man in the long coat she had seen and spoken to in the woods. Several witnesses testified that a long dark coat (GX1), found by some children playing in the woods that day, was similar to the coat worn by one of the robbers.

Police and F.B.I. agents surrounded and entered the woods. Early in the afternoon on the day of the robbery, they apprehended the defendant and another man, Reuben Sumpter, after a short chase as the two men emerged from the woods. At that time, the defendant was carrying a brown shopping bag containing $3,300 and Sumpter had more than $1,400 on his person, $606 of which was hidden in his sock and included the bait money stolen from the bank that morning. The defendant exercised

his right not to testify and the defense presented no witnesses.

In view of the foregoing facts and circumstances, there was no error in the denial of the defendant's motion for judgment of acquittal.

■ The defendant's third ground complains that the court "refused to instruct the jury as to the unreliability of eyewitness testimony." The jury was instructed on the problem of credibility of witnesses generally, and was specifically reminded that the woman who identified the defendant saw him in the woods for only a few seconds on the day of the robbery, that she had never seen him before that day, and that she did not see him again until four months later at the trial. These instructions were more than the defendant was entitled to, for the court was under no obligation to give a special instruction as to the possible unreliability of identification testimony especially when the identification was not made in the bank at the time of the robbery. United States v. Barber, 442 F.2d 517, 525–526 (3rd Cir. 1971); United States v. Moss, 410 F.2d 386 (3rd Cir. 1969).

■ The defendant's fourth ground complains that the court, in its charge on reasonable doubt, stated that "it must be the type of doubt that would cause a juror to hesitate to act on matters of the highest importance to your own interests." Specifically, defendant objects to use of the word "highest." Such an objection is without substance since use of the word "highest" in this context actually increases the burden upon the government and, to that extent, favors the defendant. This specific language has been upheld by the Third Circuit. United States v. Taylor, 334 F.Supp. 1050 (E.D.Pa.1971), aff'd, 469 F.2d 284 (3rd Cir. 1972); United States v. Nemetz, 309 F.Supp. 1336 (W.D.Pa.1970), aff'd, 450 F.2d 924 (3rd Cir. 1971). See also United States v. Ward Baking Company, 224 F.Supp. 66 (E.D.Pa.1963).

■ The fifth ground complains that the charge on unexplained possession of

recently stolen money was an indirect reference to the defendant's failure to take the witness stand. We think this ground is without merit. The charge was substantially in accord with the instructions contained in Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776, 789–791 (1969), and in Devitt and Blackmar, Federal Jury Practice and Instructions (2nd ed.) § 48.11. This portion of the charge was followed by thorough instructions on the defendant's right not to testify, and the jury's duty not to draw any presumption or inference of guilt from the defendant's decision to remain silent.

In defendant's sixth contention of error, he complains that the court erred in refusing "the Defendant's request to have offered into evidence the transcript of the testimony of [F.B.I.] Agent Gleason, recorded at the hearing before Magistrate Sensenich on June 18, 1974 at Magistrate's No. 74–94–IS." The court specifically offered the defendant an opportunity to present the testimony of the agent recorded at the June 18, 1974 hearing, and defendant refused the invitation. (Tr. pp. 268–269).

■ In his final allegation of error the defendant complains that the prosecutor in his closing argument referred to the defendant being "caught" on prior occasions with the co-defendant Sumpter. He contends that even if the word "caught" was not used by the prosecutor, there was an indirect reference to the prior criminal record of the defendant and his co-defendant. No motion for a mistrial was made, although the court treated the defendant's objection as such a motion. (Tr. p. 317).

The prosecution had proved by a police officer that he knew the defendant and had seen him on three occasions with Sumpter in 1964 and 1965. In his summation the prosecutor stated:

". . . I think that you should bear in mind that Mr. Johnson and Mr. Sumpter have known each other since 1964. We placed them together three times in that year—two in 64

and one in 65. They were not strangers to each other. They were right together. They were partners in crime right from the beginning. They started together. They came together together anyway. They ended together. They were running together. They were caught together. They were sharing things together . . ." (Tr. p. 310).

If deliberate, the prosecutor's remark that "(t)hey were partners in crime right from the beginning," following as it did the statement that they had known each other since 1964 and 1965 and were not strangers, (facts proved by a police officer) was highly improper and prejudicial. However, the remark was not emphatically made; it apparently did not impress defendant's counsel at the time, for it was not until the next morning that an objection was made on the ground that the prosecutor said "(t)hey were caught together." Admittedly, the prosecutor made that statement, but obviously, as he contended, he meant they were caught together "in this case" and not in 1964 and 1965.

In the context of the above quotation it is not incontestably clear as to what period of time the prosecutor was actually referring. The juxtaposition was either artful and improper or thoughtlessly inadvertent.

Since in the summation as a whole the objectionable remark was not emphasized or repeated, we are inclined to give the prosecutor the benefit of the doubt.

In any event, in the light of the overwhelming evidence of the defendant's guilt, the objectionable remark cannot be said to be so prejudicial as to warrant granting a new trial. United States v. White, 486 F.2d 204 (2nd Cir. 1973); United States v. Benter, 457 F.2d 1174, 1178 (2nd Cir. 1972); United States v. Fortney, 399 F.2d 406, 408 (3rd Cir. 1968).

An appropriate order will be entered.