[Crim. No. 12943. First Dist., Div. Two. Apr. 29, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
HART DEMETRIE EDDIE ALLUMS, Defendant and Appellant.

## COUNSEL

Richard D. Totter, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.**\*—Defendant appeals from a judgment of the Alameda County Superior Court after a jury verdict convicting him of violation of Penal Code section 245, subdivision (b) (assault with a deadly weapon upon a police officer).

### ISSUES PRESENTED

1) When a charge requires that the accused be armed with a deadly weapon, it is error to adjudge being armed as an independent matter.

2) Section 1025 of the Penal Code does not prohibit admission of evidence of an admitted prior conviction when evidence of the crime is admitted for a limited purpose under Evidence Code section 1101, subdivision (b).

3) *Sua sponte* instructions on unconsciousness were not required.

4) An instruction on the lesser included offense of section 245, subdivision (a), of the Penal Code was not required.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

5) The exclusion of Blacks by peremptory challenge was not unconstitutional.

6) *People* v. *Romo* █ (Cal.App.)(hg. granted Aug. 7, 1974) does not apply.

## RECORD

Defendant went to jury trial in the Alameda County Superior Court on charges of violations of section 245, subdivision (b), and of section 217, of the Penal Code.[1] Arming and use clauses were included. Defendant was also charged with a prior conviction (resisting or deterring an officer), which he admitted. The jury found him guilty as charged and that he was armed with and used a firearm during the commission of the offense. Defendant was sentenced to state prison pursuant to the provisions of section 1168 of the Penal Code. It was further provided that the provisions of section 12022.5 of the Penal Code

## EVIDENCE

The Berkeley Police Department held a teletyped burglary warrant from the San Francisco Police Department for defendant's arrest. An unsuccessful attempt to serve it had been made. Ted Barron, manager of the California Terrace Inn where defendant had previously stayed, knew that the police were looking for defendant and had told defendant so. Barron telephoned the police that defendant would be coming to the inn to pick up his welfare check. Defendant phoned Barron asking him to put the check outside the building. Barron refused. Officers Brown in street clothes and Lopes in police uniform came to the inn to wait for defendant. While Officer Brown and Barron were talking, defendant appeared. Brown displayed his badge and informed defendant he was under arrest for burglary. Brown drew his gun, and while he was turning defendant against the wall, defendant fled. Radioing that defendant had escaped, Brown gave chase. Officer Lucey in the meantime was in his police car, and seeing defendant jogging down the street, took after him in the car. Defendant entered a blue car in which his father was sitting in the driver's seat. Lucey drove his car so as to block the blue car. Lucey got out of his car and told defendant to get out of the blue car and that he was under arrest. Officer Lopes then arrived and also told defendant

---

[1] Prior to argument the prosecutor moved to strike the charge of a violation of Penal Code section 217, and the motion was granted.

he was under arrest and to get out of the car. Defendant's father who had alighted from the car, also urged defendant to get out. Seeing that defendant was not going to do so, Lopes reholstered his gun. Lopes entered the vehicle. Defendant attempted to leave and then engaged in a struggle with Lopes, eventually grabbing Lopes' gun, ripping the holster. Seeing Lopes in trouble, Lucey went to his aid. Defendant pointed the weapon at Lopes' head. Lopes grabbed the gun's barrel. In the struggle the pair fell out of the car. As they fell a shot was fired inflicting a crease wound on Lopes' arm. Defendant's hand was on the gun's stock. Lopes did not have a finger on the trigger. On the sidewalk the struggle continued. Defendant continued to pull the trigger, but Lopes kept the gun from firing by placing a finger in the slide chamber preventing a bullet from entering the chamber and eventually he was able to activate the safety. The gun was then pried loose from defendant's grip and Officer Brown who had arrived on the scene, subdued defendant by striking him twice on the forehead with his gun.

Defendant's father testified that Officer Lopes, not defendant, was holding the gun in the normal firing position when it went off. Defendant claimed that he never had a hand on the trigger, was never shown a badge by Officer Brown, and was never told by Barron that the police were looking for him. Defendant claimed the fight was provoked by Officer Lopes hurling insults at him and then striking him for no reason.

Evidence of a prior similar offense was admitted pursuant to section 1101, subdivision (b), of the Evidence Code. Defendant who was then in municipal court on another charge was arrested in the courtroom on an outstanding petty theft warrant. Defendant attempted to flee but his exit was blocked. During a struggle with the bailiff, defendant unsuccessfully attempted to grab his gun but did succeed in grabbing his nightstick, inflicting one blow before he was finally subdued by chemical mace.

1) *Finding as an independent matter that defendant was armed was error.*

■ Defendant correctly contends and the Attorney General concedes that being armed with a deadly weapon is necessarily included in the offense of assault with a deadly weapon and therefore the finding that he was armed should be stricken. (*People* v. *Hartsell* (1973) 34 Cal.App.3d 8, 12 [109 Cal.Rptr. 627].) The judgment and the abstract of judgment will be appropriately modified.

### 2) *Admitted prior conviction.*

Defendant, referring to Penal Code section 1025, contends that where a defendant has admitted a charged prior conviction as he did, evidence of that prior conviction should not be admissible in the trial of his subsequent offense. He concedes case authority holds that, notwithstanding that section, the prior conviction may be admitted when it is "an element of the crime in chief, for impeachment if the accused testifies," and under Evidence Code section 1101, subdivision (b), it is admissible to prove intent, knowledge and so forth.[2]

█ Evidence of other crimes admitted for a limited purpose under Evidence Code section 1101, subdivision (b), is not barred by section 1025. (*People* v. *Washington* (1969) 71 Cal.2d 1061 [80 Cal.Rptr. 567, 458 P.2d 479]; *People* v. *Peete* (1946) 28 Cal.2d 306, 314-320 [169 P.2d 924]; *People* v. *Leyva* (1960) 187 Cal.App.2d 249, 254 [9 Cal.Rptr. 469].) █ And, as stated in *People* v. *Enos* (1973) 34 Cal.App.3d 25, 34 [109 Cal.Rptr. 876]: "Where the proffered evidence is that of other crimes it 'should be scrutinized with great care, however, in light of its inherently prejudicial effect, and should be received only when its connection with the crime charged is clearly perceived.' (*People* v. *Durham, supra,* 70 Cal.2d 171, 186-187.) If its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. (*People* v. *Kelley, supra,* 66 Cal.2d 232, 239; *People* v. *Albertson,* 23 Cal.2d 550, 577 [145 P.2d 7].) This principle is consonant with that stated in Evidence Code section 352 that the court in its discretion may exclude evidence if its probative value is substantially outweighed by its prejudicial effect. (See *People* v. *Archerd,* 3 Cal.3d 615, 638 [91 Cal.Rptr. 397, 477 P.2d 421]; *People* v. *Durham, supra,* at p. 186; *People* v. *Schader, supra,* 71 Cal.2d 761, 772.) 'When its probative value, addressed to the crime charged, is great to prove a vital issue as compared with the lesser likelihood that a jury will be led astray and convict an innocent man because of his bad record, the evidence should be admitted.' (*People* v. *Sheets,* 251 Cal.App.2d 759, 764-765 [59 Cal.Rptr. 777]; *People* v. *Schader, supra,* pp. 761, 774.) On the other

---

[2]Evidence Code section 1101 reads in pertinent part: "(a) . . . evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion. (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts. . . ."

hand, where the sole purpose and effect of the evidence of other crimes is to show the defendant's bad moral character or disposition to commit crime, the evidence should be excluded. (*People* v. *Peete, supra,* 28 Cal.2d 306, 314; *People* v. *McMonigle,* 29 Cal.2d 730, 742 [177 P.2d 745].)" In the instant case the evidence of the similar had a "clearly perceived" connection with the current charge against the defendant. ■ Both incidents involved an attempt by a peace officer to arrest the defendant on a warrant, a physical resistance by defendant to the arrest, and an attempt by defendant to gain possession of the arresting officer's weapon.

■ Defendant contends the prosecutor improperly referred to the prior conviction in his opening statement and his arguments to the jury. A review of the augmented reporter's transcript reveals the prosecutor mentioned the prior conviction once in his opening statement and once in his closing argument. No mention was made in the opening argument. In the opening statement, the prosecutor merely referred to the prior conviction as an "encounter." In the closing argument, the prosecutor referred to the prior conviction as an "incident." Hence, in neither reference nor at any time did the jury discover that defendant was convicted of the offense. There was no impropriety in the prosecutor's remarks.

■ Defendant contends also that the evidence of a similar which was admitted did not meet the standards of *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. That case concerns the standards for admissibility of prior convictions for impeachment purposes, not as similars. Additionally, in the instant case the trial court specifically ruled that under *Beagle* the prior conviction herein could not be admitted for impeachment purposes.

3) Sua sponte *instructions on unconsciousness not required.*

Defendant contends that the court should *sua sponte* have instructed on unconsciousness due to the blows to his head during his struggle with Officer Lopes. However, the evidence did not justify giving such instructions. Defendant in his testimony vividly recalled the precise events which happened at the time in question. He testified in detail what occurred during the course of his struggle with Officer Lopes both before and after the gun was discharged. Moreover, he did not claim to have been struck in the head until the affray was at its very end. His

alleged going "off" into a coma did not occur until after the gun was taken away and Officer Brown subdued him.

■ Since there was no evidence of unconsciousness during the assault, the instructions need not have been given. (*People* v. *Roy* (1971) 18 Cal.App.3d 537, 550 [95 Cal.Rptr. 884], cert. den., 405 U.S. 976 [31 L.Ed.2d 251, 92 S.Ct. 1202].)

4) *Instructions on lesser included offense provided by section 245, subdivision (a), of the Penal Code not required.*

■ Defendant contends that because of his testimony that he was merely defending himself against Officer Lopes who was striking him for no reason, the court *sua sponte* should have instructed on section 245, subdivision (a), of the Penal Code (assault with a deadly weapon), and had it done so, the jury might have found him guilty of that lesser offense only. If all defendant's testimony was that he was struggling only to defend himself, the instruction would have been required.

However, defendant went on to testify that the gun was always in Lopes' hand and that he (defendant) never pulled the trigger nor did he have the gun in his possession although he might have had his hand on it. Hence, under defendant's version of the events, he was not guilty of assault with a deadly weapon in any form, as the gun either fired accidentally while he was resisting excessive force, or Officer Lopes pulled the trigger. Therefore, the court properly did not instruct on assault with a deadly weapon, as the evidence supported a verdict of guilty as charged or not guilty of any offense. (*People* v. *Whalen* (1973) 33 Cal.App.3d 710, 718 [109 Cal.Rptr. 282]; *People* v. *Morrison* (1964) 228 Cal.App.2d 707, 712-713 [39 Cal.Rptr. 874].)

Moreover, it is clear from the colloquy out of the presence of the jury between the court, defense counsel and defendant himself that the defendant wanted the jury to consider only the offense charged, a violation of section 245, subdivision (b), of the Penal Code. Just before argument, the court informed counsel of the instructions it expected to give so that counsel might have them in mind during argument. After referring to the instructions intended to be given the court said: "We've discussed whether or not there were any lesser included offenses that should be included, but I'm going to put that on the record later when the defendant comes or I won't actually say anything. You [referring to

defense counsel Allan Hymer] say he's instructed you not to have any. We've had discussions as to whether there were any, but I want the defendant to speak. You can just ask him any questions that you think are right." Defendant then appeared and the court said to him, "Mr. Allums, we've gone over the instructions and I've given every instruction that your attorney has requested or I'm going to give. We got into some discussion as to whether there were any, what we call, necessarily included or lesser offenses, and Mr. Hymer indicated that he wanted to discuss that with you on the record so he had your desires and followed out what your request is so he wanted to ask you a couple of questions."

Mr. Hymer then said to defendant: "Mr. Allums, you understand what necessarily lesser included offenses are?" The defendant: "Yes, I believe so." Mr. Hymer: "In other words, in some offenses there are what are called lesser included offenses to that offense. Now, the offense that's charged against you now is a felony which is punishable by a sentence of State prison from five years to life. The lesser included offenses, if they are given, if the Court gives such instructions and the jury is instructed on them, are offenses to this offense, possibly an assault or what they call Section 148 of the Penal Code, which is resisting, delaying or obstructing an arrest, which is—are misdemeanors. Now, you had indicated to me last night that you did not wish the jury to consider finding you guilty of a misdemeanor." The defendant: "Right." Mr. Hymer: "It was either all or nothing." The defendant: "Right." Mr. Hymer: "So what I want to make clear, you understand the right that you are giving up and you're sure that's what you want." The defendant: "That's right, definitely."

In this discussion it clearly appears that the court was given the impression that the defendant did not want given instructions on any lesser included offense, but wanted the case submitted to the jury on an all or nothing basis. This refusal to permit a compromise verdict through lesser included offense instructions was a matter of selected trial tactics. (*People* v. *Scobie* (1973) 36 Cal.App.3d 97, 101 [111 Cal.Rptr. 600].) Under the circumstances, the court was not required to give instructions on lesser included offenses.

5) *Challenge of Blacks.*

In a particular criminal case, appellate courts will not examine the reasons for the prosecutor's use of peremptory challenges. (*Swain* v. *Alabama* (1965) 380 U.S. 202, 221-222 [13 L.Ed.2d 759, 773-774, 85 S.Ct. 824]; *In re Wells* (1971) 20 Cal.App.3d 640, 647-648 [98 Cal.Rptr. 1].)

Rather, the burden is on the defendant to show a systematic use of peremptory challenges to exclude Blacks over a period of time. (*Swain v. Alabama, supra,* at p. 227 [L.Ed.2d at pp. 776-777]; *In re Wells, supra.*) ■ In the present case, the prosecutor peremptorily challenged all the Black members of the jury panel except one, who was excused for cause. However, defendant has made no showing that this is the prosecution's policy over a period of time, nor does the record reveal such a policy. Accordingly, defendant has not met his burden under *Swain* and *Wells.*

6) *People* v. *Romo.*

Defendant contends his sentence should be modified pursuant to *People* v. *Romo, supra* (Cal.App.), which modified the sentencing of a defendant convicted of violation of Penal Code section 245, subdivision (a), by striking from the judgment the phrase "term provided by law" and inserting "term provided by law, subject to the limitation that defendant's term may not exceed 10 years." ■ The court there held that the penalty provided by Penal Code section 245, subdivision (a), of a maximum of life imprisonment is both cruel and unusual punishment and therefore void under California Constitution article I, section 6. In the case at bench defendant was convicted of violating not section 245, subdivision (a), but section 245, subdivision (b).

Defendant's contention is made without argument but by simply stating and citing *Romo.* However, hearing has been granted in that case and in the contrary case of *People* v. *Wingo*■ (Cal.App.)(hg. granted Aug. 7, 1974), thereby vacating both opinions. Moreover, although appellant assumes *Romo* is applicable, both *Romo* and *Wingo* involve the constitutionality of the penalty provision of Penal Code section 245, subdivision (a), not subdivision (b), which we deal with here. A violation of Penal Code section 245, subdivision (b), requires the additional element that the assault be upon a peace officer (or fireman), thereby aggravating the offense. Since peace officers (and firemen) are regularly exposed to greater risks and act for the benefit of the entire public, it is reasonable for the Legislature to impose harsher penalties upon those who commit assaults upon them. (*People* v. *Beachem* (1963) 223 Cal.App.2d 383, 387-388 [35 Cal.Rptr. 673].) Dealing with section 245, subdivision (b), of the Penal Code, *Beachem* holds (at p. 388): "It is neither arbitrary, capricious nor unreasonable for the Legislature to enact a statute which invokes a special punishment for an assault upon a peace officer acting in the line of duty, in order to deter such conduct."

Therefore, even if our Supreme Court finds the penalty provision of section 245, subdivision (a), unconstitutional, it does not necessarily follow that the penalty provision of section 245, subdivision (b), is likewise invalid.

We see no necessity for delaying our decision in the case at bench until *Romo* and *Wingo* are decided. The sentence is correct under the present state of the law. If defendant deems the outcome of those cases favorable to his contention, he may then petition for habeas corpus to determine if his sentence is cruel or unusual.

The statements in the judgment and in the abstract of judgment "that the defendant was armed with a deadly weapon and did use a firearm" and that "the provisions of section 12022.5 of the Penal Code shall apply as to the use clause" are stricken, and the following is inserted in their place: "Defendant used a firearm in the commission of the offense within the meaning of Penal Code sections 1203 and 12022.5 but Penal Code sections 12022 and 3024 are not applicable." Otherwise, the judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied May 30, 1975, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1975.