[No. 43943.    En Banc.    May 13, 1976.]

THE STATE OF WASHINGTON, *Respondent,* v. TRINIDAD
SALINAS, *Appellant.*

*Porter, Schwab & Royal* and *Robert B. Royal,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Catherine Lee Campbell, Deputy,* for respondent.

WRIGHT, J.—This case presents two issues. First, the constitutionality of a prosecutor's use of peremptory challenges to exclude Spanish-surnamed veniremen from serving in a jury trial of a Mexican-American defendant. Second, the correctness of an instruction pertaining to the use of force in resisting the arrest of another. We uphold the validity of

the defendant's conviction both as to the jury's composition and as to the instruction on self-defense.

The facts leading to the trial and conviction of Trinidad Salinas are as follows: Officer Earl J. Middleton, of the police department of Granger, Washington, while on routine patrol sighted appellant's younger brother, Carlos, near a school. The officer made contact with Carlos who suddenly cursed the officer and raced away in his car. The officer pursued the car until it had stopped in front of the Salinas home. The officer pulled Carlos out of the car and proceeded to pat him down. Carlos offered violent resistance to entering the police car and then the officer wrestled Carlos into the police car. As appellant approached he testified that he saw Officer Middleton pulling his younger brother by the hair, causing Carlos to fall down on the concrete, and then observed the officer knee Carlos several times. Thereafter, appellant ran at Officer Middleton yelling and striking the officer with a chain. According to appellant, the chain was a dog collar "choke chain." The officer testified it was a doubled-over bicycle chain. The chain was never found. Photographs of the injuries suffered by Officer Middleton would tend to substantiate the version that it was in fact a bicycle chain.

The officer, after being struck, pulled his can of Mace and sprayed appellant. The officer claims that appellant struck once more with the chain after being sprayed, however appellant denies any further blows after being sprayed. Appellant's younger brother thereupon returned to the scene with a part of an automobile jack. The officer testified that he then pulled his gun, put it away and redrew it when Carlos came at him a second time with the jack. Carlos and appellant were then arrested. Appellant was charged with second-degree assault.

At the commencement of trial appellant challenged the entire jury panel based on the improper exclusion of persons of Mexican descent from the jury panel. Appellant also objected to the prosecutor's striking, by means of peremptory challenges, all three Mexican-Americans on the

jury panel. At trial, the physician who attended Officer Middleton's wounds, testified that during examination he observed a multiple series of contusions and abrasions. On cross-examination, the doctor was asked what would produce such wounds and he answered, "usually a significant blow." He did not decline to classify this as a serious injury, but rather he characterized it as one resulting from a moderately severe blow which could be disabling at least for the next day. He further reported that using a lay definition, Middleton was not in "shock," but was in pain.

At the close of the trial, the court refused to give the appellant's proposed instruction regarding self-defense. Appellant's instruction was based on RCW 9.11.040 (3), permitting the use of force to prevent a simple or unaggravated offense against "a party about to be injured, or by another lawfully aiding him." Instead the court instructed the jury that force was justifiable only if used to resist the commission of a felony or to resist "some great personal injury to the defendant, or to any such person in his presence." Thereafter, the jury found appellant guilty of second-degree assault. He was sentenced to 10 years confinement. Appellant, on appeal, assigns as error (1) the exclusion of Mexican-Americans from the jury panel; (2) the court's failure to give the appellant's requested instructions on the justifiable use of force; (3) failing to hold as a matter of law that the evidence is insufficient to support a conviction for second-degree assault.

■ A criminal defendant possesses no constitutional right to be tried by a petit jury which contains a proportionate number of members of his own race. *Swain v. Alabama*, 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965); *Government of the Virgin Islands v. Navarro*, 513 F.2d 11 (3d Cir. 1975). Nor is there a constitutional right to be tried by a jury containing at least one member of the defendant's race. *Akins v. Texas*, 325 U.S. 398, 89 L. Ed. 1692, 65 S. Ct. 1276 (1945). The only right the criminal defendant has is that the selection process which produced the jury "did not operate to systematically exclude distinc-

tive groups in the community and thereby fail to be reasonably representative thereof." *Taylor v. Louisiana*, 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692 (1975). The point at which to consider the constitutionality of the selection process has usually been at the selection of a master list from which the panel for each jury term is selected. *Ford v. Hollowell*, 385 F. Supp. 1392 (N.D. Miss. 1974); *United States v. Johnson*, 386 F. Supp. 1034 (W.D. Penn. 1974); *State v. Clapp*, 335 A.2d 897 (Me. 1975); *Mobley v. United States*, 379 F.2d 768 (5th Cir. 1967); *Butler v. State*, 134 Ga. App. 131, 213 S.E.2d 490 (1975); *Foster v. Sparks*, 506 F.2d 805 (5th Cir. 1975); *State v. Groves*, 311 So. 2d 230 (La. 1975).

Appellant, however, offered no proof in support of his objection to the actual selection of members of the jury pool, nor in support of his objection to the prosecutor's use of three peremptory challenges. He did offer the record of empanelment of the jury, but made no showing of any systematic plan of the prosecuting attorney.

As a general rule, the alteration of the composition of the jury, by means of challenges for cause and/or peremptory challenges, is not the stage where motives of the prosecutor can be scrutinized. The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. *State v. Thompson*, 68 Ariz. 386, 206 P.2d 1037 (1949); *Lewis v. United States*, 146 U.S. 370, 36 L. Ed. 1011, 13 S. Ct. 136 (1892). It is a challenge that is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another," *Lewis v. United States, supra* at 376; or upon a juror's "habits and associations," *Hayes v. Missouri*, 120 U.S. 68, 70, 30 L. Ed. 578, 7 S. Ct. 350 (1887); or upon the feeling that "the bare questioning [of the juror's] indifference may sometimes provoke a resentment," *Lewis v. United States, supra* at 376. As pointed out in *Swain v. Alabama, supra* at 220-21:

It [the peremptory] is no less frequently exercised on

grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the *voir dire*, by both prosecutor and accused, *Miles* v. *United States*, 103 U.S. 304; *Aldridge* v. *United States*, 283 U.S. 308. This Court has held that the fairness of trial by jury requires no less. *Aldridge, supra.* Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.

(Footnotes omitted.)

██ However, scrutiny of the motives behind the prosecutor's use of the peremptory challenge is not foreclosed altogether. In *Swain v. Alabama, supra* at 223-24, where the defendant was challenging a jury deficient in members of the black race, the court established the test for a successful challenge to a prosecutor's use of the peremptory. An arrest of judgment or new trial will be granted if the showing can be made that

the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. Cf. *Yick Wo* v. *Hopkins*, 118 U.S. 356. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are

excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

Unless the defendant in the instant case can show that persons of Spanish-American descent were systematically excluded from jury service in Yakima County generally, the use of the three peremptory challenges by the prosecutor is insufficient to raise any issues of due process or equal protection. The following cases illustrate the reluctance of courts to overturn a verdict merely on the single showing that peremptories were used to alter the racial composition of the jury whose verdict is being appealed.

In *Little v. United States*, 490 F.2d 686 (8th Cir. 1974) the prosecution struck all black members of the jury panel. The court found no unlawful discrimination stating at page 688:

> The fatal weakness of appellant's claim is the absence of any proof to show that the United States Attorney's office in the Eastern District of Missouri has systematically excluded blacks from the jury in cases in which the defendant is of the same race. Under the plan for random jury selection blacks are regularly summoned for jury duty.

In *Swope v. State*, ............ Ind. ............, 325 N.E.2d 193 (1975), 65 prospective jurors were called by the court, 5 of whom were Black. The state exercised nine of its peremptory challenges and challenged all five of the Blacks. In consequence, no Black served on the jury. It was held that absent intentional and systematic exclusion of black jurors, no issue of equal protection or due process was raised.

In *United States v. Harris*, 368 F. Supp. 697 (E.D. Pa. 1973), the government exercised four of its six peremptory challenges to strike Blacks from the jury. The court denied the defendant's motion for new trial, or in the alternative a judgment of acquittal. The court in citing to the case of

*United States v. Corbitt*, 368 F. Supp. 881 (E.D. Pa. 1973) stated at page 706 in *Harris*:

> ". . . the thought processes of the prosecutor in deciding how he will exercise these [peremptory] challenges is beyond the Court's inquiry, and the resulting composition of the jury in a particular case does not establish impropriety." (United States v. Corbitt, p. 886.)

See also, Swain v. Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965); United States v. Carlton, 456 F.2d 207, 208 (5th Cir. 1972).

In *State v. McAllister*, ............ La. ............, 285 So. 2d 197 (1973), six Blacks were peremptorily challenged by the state. A single Black was accepted by both the state and the defense and actually sat in judgment of the case. At the conclusion of the selection process the state had five peremptory challenges remaining. The court held that the prosecutor's motive for exercising the peremptory challenges was not subject to judicial review.

In *People v. Allums*, 47 Cal. App. 3d 654, 121 Cal. Rptr. 62 (1975), the prosecutor peremptorily challenged all the black members of the jury panel except one, who was excused for cause. The court, in upholding the conviction, stated at page 663:

> In a particular criminal case, appellate courts will not examine the reasons for the prosecutor's use of peremptory challenges. (*Swain* v. *Alabama* (1965) 380 U.S. 202, 221-222 [13 L.Ed.2d 759, 773-774, 85 S.Ct. 824]; *In re Wells* (1971) 20 Cal.App.3d 640, 647-648 [98 Cal.Rptr. 1].) Rather, the burden is on the defendant to show a systematic use of peremptory challenges to exclude blacks over a period of time. ( *Swain* v. *Alabama, supra,* at p. 227 [L.Ed.2d at pp. 776-777]; *In re Wells, supra.*) In the present case, the prosecutor peremptorily challenged all the black members of the jury panel except one, who was excused for cause. However, defendant has made no showing that this is the prosecution's policy over a period of time, nor does the record reveal such a policy. Accordingly, defendant has not met his burden under *Swain* and *Wells.*

In *Watts v. State*, 53 Ala. App. 518, 301 So. 2d 280 (1974)

the jury selection commenced with 36 qualified veniremen; 14 were black. In the process of striking the jury, appellant-defendant, through his counsel, struck 2 of the Blacks and the state struck the other 12. After the jury was selected, appellant invited the attention of the court to the fact that the jury was then all white and requested that there be at least one black juror. The court denied the request. On appeal, that court's action was affirmed, with the court stating at page 522:

> The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case."

Other cases in accord: *People v. Redwine*, 50 Mich. App. 593, 213 N.W.2d 841 (1973) (held a prosecutor's use of peremptory challenges to excuse all Blacks from jury did not deny defendant due process or trial by an impartial jury, even though the community was made up of 13.5 percent black people); *Commonwealth v. Mitchell*, .......... Mass. .........., 326 N.E.2d 6 (1975) (held *Commonwealth's* peremptory challenge of potential black jurors and absence of Blacks on jury did not warrant determination that defendant was denied a trial by an impartial jury); *Jackson v. Hopper*, 232 Ga. 419, 207 S.E.2d 58 (1974) (held prosecutor's striking all potential black jurors for particular trial did not deny defendant equal protection); *State v. Arceneaux*, .......... La. .........., 302 So. 2d 1 (1974) (held presence of only one Black because state exercised its peremptory challenges against other Blacks, absent showing of systematic exclusion of Blacks from jury, is not subject to review).

It is clear that appellant has failed to make the required showing of a systematic removal by the prosecutor of Span-

ish-surnamed veniremen from juries empaneled to hear cases against Mexican-Americans. The record only discloses the use of three peremptory challenges in this single instance. We do not think it proper that we should examine the prosecutor's motives which would have the effect of converting a peremptory challenge into a challenge for cause.

The court's challenged instruction No. 23A on self-defense was based on RCW 9.48.170. The instruction read:

Assault is justifiable when committed in the lawful defense of the defendant or of any other person in his presence or company, when there is reasonable ground by the defendant to apprehend a design on the part of the person assaulted to commit a felony, or to do some great personal injury to the defendant, or to any such person in his presence, and there is imminent danger of such design being accomplished.

This instruction is correct under the facts of this case.

We conclude, therefore, that the court's instruction on the issue of self-defense being based on the statute was correct.

Instruction No. 9 set forth the facts, *all* of which the jury must find in order to convict the defendant, Trinidad Salinas, of assault in the second degree. Instruction No. 9 read:

You are instructed that if you find from the evidence, beyond a reasonable doubt, all of the following alleged facts, you will find the defendant, TRINIDAD SALINAS, guilty of the crime of assault in the second degree, as charged in the Information.

1. That on or about the 8th day of May, 1974, the defendant, TRINIDAD SALINAS, did knowingly, willfully and feloniously assault another, to-wit: a Granger Police Officer.

2. That the defendant did inflict grievous bodily harm upon the said Granger Police Officer;

3. That such assault occurred within Yakima County, Washington.

But if, after a careful consideration of all the evidence, you have a reasonable doubt as to the existence of any or all of the alleged facts, it would be your duty to find the

defendant, TRINIDAD SALINAS, not guilty of the crime of assault in the second degree.

■   Appellant contends that the infliction of welts and gashes upon the skin as a matter of law does not constitute "grievous bodily harm." We disagree. Instruction No. 11 defined grievous bodily harm.

> You are instructed that the words "grievous bodily harm" include a hurt or injury calculated to interfere with the health or comfort of the person injured; it need not necessarily be an injury of a permanent character. By "grievous" is meant atrocious, aggravating, harmful, painful, hard to bear, serious in nature.

No exceptions were taken to the above instruction which we feel adequately states the law. *See State v. Linton,* 36 Wn.2d 67, 216 P.2d 761 (1950). We have reviewed the photographic exhibits of Officer Middleton's injuries and conclude that the contusions across the face, shoulder, and lower back constitute such an injury that the jury could reasonably deem same to be a "grievous bodily harm."

The case of *State v. Linton, supra,* strongly supports the result we reach on this question. In *Linton* the evidence was of a blow on the chin. Some witnesses testified the complaining witness' jaw was swollen and discolored, and her initial complaints dealt largely with the blow. A photograph in evidence showed the swelling, but not the discoloration. In that case, it was held at page 96 that "the evidence establishes an assault more serious than third degree." Therein it was also held at page 96 that " 'What is grievous bodily harm is ordinarily a jury question. *State v. Gaularpp,* 144 Minn. 86, 174 N.W. 445.' " Citing *State v. Bowers,* 178 Minn. 589, 228 N.W. 164 (1929).

*State v. Miles,* 77 Wn.2d 593, 464 P.2d 723 (1970) can be distinguished. Therein there was no evidence except of a cut or bruised lip. In that case, two police officers who had seen the complaining witness soon after the occurrence testified. One noticed no injury at all, the other only a swollen lip. There was no evidence of any other injury. The witnesses did not in any way describe in detail the cut or

swollen lip. That case is very different from the present case wherein there were substantial and well proved injuries.

Officer Middleton had to go to the hospital emergency room immediately after the assault. He received medical treatment and there is medical evidence. The physician, Harold Douglas Buckley, M.D., testified that he "observed multiple marks across his back which were chain like in their sequence. They were linear and had multiple bruises and abrasions across his back." The physician also testified that Officer Middleton was in pain and was given medication for pain. The officer also testified he suffered pain, and was not feeling well and was weak in the knees.

Several colored photographs were admitted into evidence. The photographs show the injuries to Officer Middleton and were taken the following morning at 11:45 by Sergeant Robert Langdale, head of the detective division of the Yakima County Sheriff's Office.

We find no error and, therefore, affirm the conviction of the appellant.

STAFFORD, C.J., and ROSELLINI, HAMILTON, and BRACHTENBACH, JJ., concur.

UTTER, J. (dissenting)—I dissent. Action by the State which results in exclusion of persons from jury service solely on the basis of race is a denial of equal protection of the laws and of due process and is "at war with our basic concepts of a democratic society." *Smith v. Texas*, 311 U.S. 128, 130, 85 L. Ed. 84, 61 S. Ct. 164 (1940). A fair trial in a fair tribunal is a fundamental requirement of due process. *Peters v. Kiff*, 407 U.S. 493, 500, 33 L. Ed. 2d 83, 92 S. Ct. 2163 (1972).

If the State through the prosecuting attorney is allowed to exclude from the trial jury by use of the peremptory challenge all members of the defendant's race, then the assurance gained by their presence of at least the appearance of a fair trial in a fair tribunal is lost. Decisions on systematic exclusion of jurors have deferred to the use of the peremp-

tory challenge by prosecuting attorneys. Judicial deference, however, does not resolve the conflict between the right to use the peremptory challenge and a defendant's right to be tried by a fair and impartial jury.

The defendant is entitled to a fair and impartial tribunal. Even if there is no actual bias in the tribunal, the Supreme Court has held that there is a denial of due process where circumstances create the likelihood or appearance or bias. *Peters v. Kiff, supra* at 502. There, at page 503, the court noted "[w]hen any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable."

A long line of United States Supreme Court decisions has required that the selection process insure "a fair possibility for obtaining a representative cross-section of the community." *Williams v. Florida*, 399 U.S. 78, 100, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970). Some courts have recently extended this principle to hold that, under the Sixth Amendment an impartial jury of the state and district where the crimes shall have been committed, must be selected from a representative cross section of the community where the crime occurred. *Maryland v. Brown*, 295 F. Supp. 63, 77 (D. Md. 1969); *People v. Jones*, 9 Cal. 3d 546, 556, 510 P.2d 705, 108 Cal. Rptr. 345 (1973); *Alvarado v. State*, 486 P.2d 891 (Alas. 1971).

The function of a modern jury has been said to be "the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." *Williams v. Florida, supra* at 100. Where members of the defendant's race, who comprise a significant part of the community, are excluded from participation on the jury by the exercise of peremptory challenges and cannot participate in the commonsense judgment of a group of laymen

by sharing their qualities of human nature and varieties of human experience, the integrity of the jury process is severely challenged. "The very idea of a jury is a body of men [and women] composed of the peers . . . of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates . . ." *Strauder v. West Virginia*, 100 U.S. 303, 308, 25 L. Ed. 664 (1879). There is no argument in this case that Mexican-Americans do not constitute a significant number in either Yakima County or in the town of Granger, where the offense allegedly occurred. In fact, it is estimated that Mexican-Americans comprise from 65 to 75 percent of the population of Granger. The State's use of the peremptory challenge resulted in no persons of that race serving on the jury which determined appellant's guilt or innocence.

There is no constitutional or historical sanctity attached to the peremptory challenge. Its use by the Crown in England was curtailed through the Ordinance for Inquest as early as 1305. 33 Edw. 1, Stat. 4 (1305). Since that time it has been available only to the defendant and has fallen into disuse in England. Orfield, *Criminal Procedure from Arrest to Appeal* 355 (1947); Harris, *Criminal Law* 443 (20th ed. 1960). If the use of a peremptory challenge, a procedure not of constitutional stature, violates a constitutional right, there is no room for its survival. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178, 2 L. Ed. 60 (1803).

The very nature of the peremptory challenge is that it is one for which no cause is publicly stated. RCW 4.44.140. When the only apparent cause for its exercise in a given case is the exclusion of a juror on the basis of that juror's racial background, that exercise should be viewed as prima facie discriminatory and unconstitutional. Placing the burden of justifying the challenge on nonracial grounds on the prosecution, the only party able to explain why a particular juror was excluded by it, would tend to negate the appearance or fact of the State's involvement in discriminatory jury selection. This shift of burden is common in other

cases where discriminatory practices appear to have occurred, particularly where one party has the ability to produce the relevant facts. *See, e.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971) (employment requirements); *Gaston County v. United States,* 395 U.S. 285, 293, 23 L. Ed. 2d 309, 89 S. Ct. 1720 (1969) (voting rights); *United States v. St. Louis-San Francisco Ry.,* 464 F.2d 301, 307-08 (8th Cir. 1972) (employment); *United States v. Carpenters Local 169,* 457 F.2d 210, 214 (7th Cir. 1972) (employment); *Chambers v. Hendersonville City Bd. of Educ.,* 364 F.2d 189, 192 (4th Cir 1966) (employment); *Northcross v. Board of Educ.,* 333 F.2d 661, 664 (6th Cir. 1964) (education); *Burner v. Washington,* 399 F. Supp. 44, 47-48 (D.D.C. 1975) (municipal services); *Larry P. v. Riles,* 343 F. Supp. 1306, 1309-10 (N.D. Cal. 1972) (educational tests); *Hobson v. Hansen,* 269 F. Supp. 401, 417, 426, 429 (D.D.C. 1967) (education); *see generally Hernandez v. Texas,* 347 U.S. 475, 480, 98 L. Ed. 866, 74 S. Ct. 667 (1954) (jury service).

I recognize that in *Swain v. Alabama,* 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965), in which one Justice specially concurred, one concurred in the result, and three Justices dissented, the majority refused to limit the use of peremptory challenges when they were used to remove Blacks from the petit jury. There it was shown no Blacks had been on a trial jury in that county in nearly 15 years. The court held allegations or proof that the prosecutor made discriminatory use of peremptory challenges in a particular case will not sustain a claim of the denial of equal protection. "The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court." *Swain v. Alabama, supra* at 222. The majority in *Swain* took the anomalous position that if the discrimination involved exclusion from a jury panel, a prima facie case of jury exclusion would be made out but if the exclusion was from the jury itself, the burden remained on the

defendant. As noted by the dissent, at page 239, "[t]his distinction is novel to say the least."

The court did appear to leave open the question of possible rebuttal of the presumption that the prosecutor acted properly where it could be shown the prosecutors consistently and systematically used peremptory challenges to prevent all Blacks from serving as trial jurors. It held the facts of the case did not rebut that presumption by failing to show when, how often, and under what circumstances the prosecutor alone had challenged Blacks appearing on county jury panels. The majority stated, at page 226, "[i]n short, petitioner has not laid the proper predicate for attacking the peremptory strikes as they were used in this case. Petitioner has the burden of proof and he has failed to carry it." Such a holding places an insurmountable burden on the challenging party. Presumably, under this test one member of a racial minority could be purposely placed on a jury in the course of 15 years simply to overcome any prospective problems of claimed discrimination. The illogic of requiring proof of a pattern of discrimination before a constitutional right is violated, is that it ignores what can be clear discrimination in those cases occurring before a pattern of discrimination is established. Moreover, it immunizes from scrutiny those discriminatory acts which occur only occasionally but which nevertheless infringe important rights of the accused and the prospective juror.

While *Swain* recognizes exclusion of minority members of a panel can be a violation of constitutional rights, the standard of proof it establishes is unworkable. The basics of a workable standard as it applies to the facts of this case require the removal of the current, practically irrebuttable, presumption of propriety on the part of the prosecution's exercise of its peremptory challenge. To do so would require the prosecution, when the exercise of that challenge removes from the trial jury a member of a minority race which constitutes a significant body of the community from which the panel is drawn, to proceed to treat its challenge in the same manner as one for cause. This would, in some

measure, prevent the now ludicrous spectacle of assuring a participant in a trial that veniremen are selected in such a manner as to insure a fair and impartial trial, while at the same time condoning the destruction of the representative nature of the jury panel by the discriminatory use of the peremptory challenge. Placing the burden on the prosecution to justify on permissible grounds its use of the peremptory challenge against a minority juror insures more than fair treatment of the accused and jury panel members. As the Supreme Court stated in *Ballard v. United States*, 329 U.S. 187, 195, 91 L. Ed. 181, 67 S. Ct. 261 (1946):

> The evil lies in the admitted exclusion of an eligible class or group in the community . . . . The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts.

While I am aware of no case on the federal level declaring the use of peremptory challenges by the prosecution violative of the due process or equal protection clauses of the Fourteenth Amendment, we are not bound to construe article 1, section 12 of our state constitution in the same manner as the Fourteenth Amendment. *Darrin v. Gould*, 85 Wn.2d 859, 868, 540 P.2d 882 (1975). Const. art. 1, § 12 may be construed to provide greater protection to individual rights than that provided by the equal protection clause of the Fourteenth Amendment. *Carter v. University of Washington*, 85 Wn.2d 391, 536 P.2d 618 (1975). I would so hold in this case.

The issue is of more than academic importance. Our previous cases defining "grievous bodily harm" as an element of assault in the second degree, RCW 9.11.020, have been far from consistent. The adjectives "atrocious, aggravating, harmful, painful, hard to bear, [and] serious in nature" have been used to describe the degree of harm required. *State v. Linton*, 36 Wn.2d 67, 95, 216 P.2d 761 (1950). Our cases demonstrate that existence of "grievous bodily harm" is a peculiarly difficult determination for triers of fact. In

*State v. Miles*, 77 Wn.2d 593, 464 P.2d 723 (1970), the appellant struck a woman in the face with either his fist or a pistol. There was evidence her lip was cut and swollen. While this was admittedly painful and harmful for a short time, we reversed as a matter of law the finding by the trial court that the victim suffered grievous bodily harm.

I do not condone appellant's conduct. His assault on the victim inflicted abrasions and contusions which were undoubtedly a cause of discomfort. Whether these injuries were so atrocious, aggravated, and harmful as to amount to assault in the second degree was, however, clearly a question of fact. The appellant should not have had his guilt or innocence—resting as it did on a factual determination so susceptible to individual judgment—determined without the presence on the trial jury of members of his own race who were properly on the jury panel. Such prospective jurors, had they not been disqualified peremptorily, would have brought to the deliberations their own "qualities of human nature and varieties of human experience" relevant to the determination of whether the victim in fact suffered "grievous bodily harm." While all the Mexican-American members of the jury panel may well have been removed for reasons unrelated to their race, we are unable to know the truth of the matter in view of the position adopted by the majority.

I would reverse the conviction and remand for a new trial.

HUNTER and HOROWITZ, JJ., concur with UTTER, J.

Petition for rehearing denied August 3, 1976.