Filed 4/27/21  In re M.K. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re M. K., a Person Coming Under the Juvenile Court Law. | C091510 |
| THE PEOPLE, | (Super. Ct. No. SCRDJDSQ193153301) |
| Plaintiff and Respondent, | |
| v. | |
| M. K., | |
| Defendant and Appellant. | |

Minor M. K. was placed on probation after the juvenile court found he had committed forcible rape.  On appeal, minor raises several evidentiary-related challenges, as well as challenges to two probation conditions the juvenile court imposed.  We agree with minor, but only in that his probation conditions must be stricken and the matter remanded for the juvenile court to impose more tailored probation conditions.  Otherwise we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Minor and the victim dated during their freshman year and into their sophomore year of high school. While dating, the two had intercourse once. They planned their rendezvous on social media. The next day the two snuck away after minor's basketball game and had sex on the school campus. After the two broke up, they continued to be friends and flirt. Minor asked the victim several times whether she would have sex with him, and she always said no. One time after the break up, the two left campus at lunch and met at a nearby apartment complex. While there, they kissed, and minor tried to convince the victim to have sex with him, but she declined.

On the evening of May 23, 2019, minor and the victim communicated over social media. They agreed to meet at lunch at the same apartment complex. Minor asked the victim whether she would have sex with him. The victim responded "sure."[1] The next day, the victim contacted minor over social media before the scheduled meeting to tell him she did not want to meet him at the apartment complex. Minor made the victim feel guilty for not meeting him, so the victim ultimately decided to meet minor at the apartment complex.

At the apartment complex, the two sat on steps outside an apartment building and began kissing. Minor then put his hand down the victim's pants. She responded by pushing his hand away, telling him no, and explaining that she did not want to have sex with him in public. Minor continued to put his hand down the victim's pants, even though she told him no multiple times. Minor eventually touched the victim's vagina and began "fingering" her. The victim felt uncomfortable and continued to tell minor to stop. He did not.

---

[1] The victim testified she was not serious when she told minor "sure." The court found that testimony untruthful.

Eventually, minor told the victim to go around the corner of the apartment building so no one could see them.  The victim complied because she did not want to get hurt.  Once around the corner, minor forcefully put his hands on the victim's breasts and kissed her there.  He also forced her hand down his pants.  She told him no and to stop.  He then put his hands back down the victim's pants.  The victim tried to push minor away, and minor responded, "It's happening whether you want it to or not."  The two then struggled with the victim's pants -- minor attempting to pull them down and the victim attempting to pull them up.  The victim continued to tell minor she did not want to have sex with him.

Minor was eventually successful in pulling down the victim's pants and underwear.  The victim did not know what to do and was scared.  Minor then got on the ground with his pants down and his penis exposed.  He pulled the victim on top of him causing his penis to go into the victim's vagina.  The victim told minor no again and tried to stand, but minor responded by putting his hands behind her knees and pulling her back onto his penis.  The victim told minor no again, but then complied because she was scared.  Minor then asked the victim if he could ejaculate inside of her and she told him no.  Minor responded, "Too late."  After minor ejaculated, the victim stood as quickly as she could, pulled up her pants, grabbed her stuff, and walked back to school with minor.  The victim was confused and did not say anything to minor on the walk back to school.

The victim attended class where she told her friend what had happened.  She stayed for the rest of the school day and then went home and took a shower because she felt she needed to clean herself.  That night the victim communicated with her friend over text messages and expressed concern that she could be pregnant.  Three days later, the victim told her sister what had happened.  The next day, she told her mother, who called the police.

Following a dispositional hearing, the court found minor to have committed forceable rape.  Minor was placed on probation with various terms and conditions.  As

part of the conditions of his probation, minor was ordered to submit to electronic searches and to refrain from viewing pornography. Minor objected to the electronic search condition as constitutionally overbroad and invalid under *In re Ricardo P.* (2019) 7 Cal.5th 1113. The court denied minor's objection noting electronic communications were involved in the commission of minor's offense.

Minor appeals.

DISCUSSION

I

*The Court Did Not Rely On Improper Expert Testimony Related To Credibility*

Minor raises two arguments related to improper expert opinion testimony. First, he argues the court prejudicially erred by admitting testimony from a nurse who examined the victim and said that the victim's demeanor was consistent with sexual assault victims. Minor also argues the court prejudicially erred by admitting testimony from the police officer who interrogated minor that minor exhibited signs of deception during the interrogation.

We agree with minor; however, we conclude the errors were harmless given the court's multiple statements that it was the judge of credibility and fact, showing that it knew of its duty and did not rely on the opinion of witnesses to determine guilt or credibility.

A

*Background*

The victim was examined by a nurse who testified at trial. The nurse testified that she noted the victim's demeanor during the exam as "difficulty describing event. Crying, but calm after." Over objection, the nurse testified it was "very common" "for victims of sexual assault to act that way during the exams." Over objection, the nurse further testified that "[b]ased on [her] training[, a] sexual assault is an event that can be very traumatizing. And because as any other traumatizing event, it can be very emotional

4

when you are told to th[ink] about the trauma, or you['re] asked questions with regards to what happened.  So because of that it can be common to react in a very emotional way."

The police officer who interrogated minor also testified.  The officer testified that he generally expects sexual assault suspects to lie.  The trial court interjected and assured the officer and minor that it was for the court to determine whether minor lied during his interrogation and to decide the facts.  The officer then clarified he was "looking for objective indicators of deception.  Those may include body movements, adjustments in the way they are seated.  Things that present in a way that most people could tell is, are like whether they are withdrawn or sunken into themselves.  Whether they are sitting upright, whether they look with their eyes at the point of the question.  [¶]  How long it takes for a person to answer the question.  The volume and the way in which they respond to a question.  The volume or the intensity of a denial.  Those are all of the indicators that help me to -- tended to show whether or not somebody is being deceptive."

At the start of minor's interrogation, minor's demeanor was pleasant and normal.  When the topic turned to the rape, however, minor became quiet, looked down, and was "kind of withdrawn."  When the officer confronted minor with an allegation that a witness heard the victim say no, minor looked down, his answers became shorter or nonverbal, and he appeared to become emotional.  To the officer, this indicated signs of deception.  After hearing this testimony, and in response to minor's objection, the court said it understood minor's problem with the testimony and assured minor it was the court's duty alone to determine the facts.  The court then sustained minor's objection to the officer's testimony that minor was likely guilty of the allegations.  The trial court further assured the parties it would view the recording of minor's interrogation and determine for itself the significance of minor's demeanor as it related to both his credibility and to whether his nonverbal communications constituted admissions.

5

B

*Any Error Was Harmless*

" 'When expert opinion is offered, much must be left to the trial court's discretion.' " (*People v. Sanchez* (2019) 7 Cal.5th 14, 46.) " 'The general rule is that an expert may not give an opinion whether a witness is telling the truth, for the determination of credibility is not a subject sufficiently beyond common experience that the expert's opinion would assist the trier of fact; in other words, the jury generally is as well equipped as the expert to discern whether a witness is being truthful.' " (*Ibid*.)

Thus, in *People v. Wells* (2004) 118 Cal.App.4th 179, the defense sought to introduce the testimony of an expert who would "testify that [the victim] did not exhibit the emotional reaction one would expect from a petite girl who had been raped by a large man. Based on her experience working with trauma victims, [the expert] believed [the victim's] demeanor was inconsistent with having suffered trauma." (*Id*. at p. 187.) The appellate court held it was not error for the trial court to have excluded this evidence. The proposed testimony applied the expert's opinion about the usual reactions of a trauma victim to the actual behavior of the alleged victim. The jury would easily have understood the testimony as a veiled opinion that since the victim did not exhibit the usual behavior she had not actually been molested. (*Id*. at p. 190.)

Similarly, in "*People v. Page* [(1991)] 2 Cal.App.4th 161 . . . , an expert testified about factors that could cause a false confession. The Court of Appeal held that the trial court acted properly in not additionally permitting the expert 'to discuss the particular evidence in this case or to give his opinion regarding the overall reliability of the confession.' [Citation.] It was for the jury, not an expert, to determine the reliability of the actual confession." (*People v. Sanchez*, *supra*, 7 Cal.5th at p. 46 [concluding an expert may testify about factors the jury should consider, "and then leav[e] it to the jury to apply that testimony to the actual facts"].)

Here, the nurse was permitted to testify about the common demeanor of sexual assault victims, as well as the victim's demeanor the nurse observed during the examination.[2] It was a step too far to testify that the victim's demeanor was like that commonly exhibited by victims of sexual assault. Similarly, the officer was permitted to testify about signs of deception and what he looked for when determining whether a suspect was lying. The officer was further permitted to testify about minor's demeanor as observed by the officer during the interrogation. It was a step too far, however, to also testify minor was deceptive or lying during the interrogation. The experts may testify about factors the fact finder should consider, but must then leave it to the fact finder to apply that testimony to the actual facts. (*People v. Sanchez, supra*, 7 Cal.5th at p. 46.)

Although the experts were permitted to apply their expertise to the facts, it is apparent the juvenile court knew it was its duty alone to decide the credibility of witnesses and determine the ultimate facts. When denying minor's motion to dismiss, the juvenile court weighed the victim's credibility, ultimately finding that parts of her testimony were untruthful even though her testimony regarding the details of the rape were generally credible. Thus, the juvenile court did not defer to the nurse's testimony when assessing the victim's credibility, opting instead for an independent inquiry.

Moreover, the juvenile court made several statements during the officer's testimony indicating it understood the proper role of the court as the fact finder. The juvenile court indicated multiple times it would assess minor's demeanor during the interrogation for itself by viewing the video of the interrogation. The juvenile court further said it alone would determine the facts of minor's case and whether minor lied, and further sustained minor's objection to the officer's testimony that minor was likely

---

[2] Minor argues the nurse was not qualified to testify about the consistency of the victim's demeanor to victims of sexual assault. Because we conclude the testimony itself was improper, we need not determine whether the nurse was qualified to give it.

7

guilty. Given these statements, it is clear under any standard that the juvenile court did not defer to witnesses to determine credibility or fact. Accordingly, there was no prejudicial error.

II

*Evidence Of The Victim's Birth Control Usage Was*
*Cumulative To Other Evidence Admitted At Trial*

Minor raises two arguments related to the trial court's exclusion of evidence that the victim had missed taking some birth control pills. First, minor argues the evidence was not made inadmissible by the rape shield law. In the alternative, minor argues that if admissibility of the evidence was affected by the rape shield law, counsel was ineffective for failing to move for its inclusion under the procedure provided by that law.

We do not consider minor's substantive claim of error because any error resulting from the court failing to admit evidence of the victim's birth control usage was harmless. Other evidence established the victim feared an unwanted pregnancy. The fact she feared an unwanted pregnancy because she failed to take some birth control pills was cumulative to evidence already considered by the trial court when assessing guilt.

A

*Background*

Before the close of the prosecution's case-in-chief, minor indicated he wanted to introduce into evidence the fact the victim was on birth control and may have missed some pills. Minor argued this evidence was relevant to show why the victim believed she was pregnant and did not tell her mother right away that minor assaulted her. The evidence, minor argued, was relevant to the victim's state of mind, her consent, and wanting to conceal the sexual contact from her mother. The prosecutor argued the evidence was inadmissible under the rape shield law and was irrelevant. The court agreed and denied the motion.

8

At the start of minor's case-in-chief, minor asked the court to revisit the issue. Minor argued evidence the victim missed taking her birth control pills, feared an unwanted pregnancy, and contemplated seeking an abortion was relevant to show her state of mind when reporting the assault to her mother. The prosecution disagreed arguing the victim's decision to have an abortion and use birth control was irrelevant and inadmissible under the rape shield law. After the prosecutor reasserted the evidence was inadmissible under the rape shield law, the court agreed, however, it noted it did not believe the rape shield law extended as far as the prosecutor believed. The court allowed the victim's friend to testify that the victim feared an unwanted pregnancy.

B

*Exclusion Of The Victim's Birth Control Usage Was Harmless*

Even if evidence of the victim's birth control usage was admissible, the trial court's exclusion of the evidence was harmless. Minor's defense was that the victim lied when she claimed her sexual interaction with minor was not consensual. Minor argues the victim's birth control usage was relevant to show her state of mind to lie because it tended to show the victim feared an unwanted pregnancy and was shifting blame from herself. Evidence that tended to show why the victim feared an unwanted pregnancy was cumulative, however, because the evidence already established the victim in fact feared an unwanted pregnancy. It was this fear of an unwanted pregnancy that demonstrated the victim's state of mind and alleged motivation to lie. Evidence the victim may have missed some birth control pills, which explained why she feared an unwanted pregnancy, which in turn explained why she was motivated to lie, was cumulative because it reaffirmed the fact that the victim feared an unwanted pregnancy. "The law is established that the erroneous exclusion of evidence is not *prejudicial* error where the excluded evidence is cumulative to other evidence which is introduced at the trial." (*People v. Valencia* (1938) 30 Cal.App.2d 126, 129; see *People v. Jenkins* (2000) 22 Cal.4th 900, 1015-1016 [finding it unnecessary to examine a "complex constitutional

9

question" because admission of cumulative evidence was harmless beyond a reasonable doubt]; *People v. Harris* (1989) 47 Cal.3d 1047, 1093 [exclusion of cumulative evidence "could not have been prejudicial"]; *People v. Helton* (1984) 162 Cal.App.3d 1141, 1146 [erroneous exclusion of hearsay evidence held harmless where it was "merely cumulative of properly admitted evidence"].)

## III

### *There Was No Cumulative Error*

Minor argues he was cumulatively prejudiced by the court's errors. We disagree. The trial court demonstrated it was aware of its role as a fact finder and was aware the victim was motivated to lie due to fears of an unwanted pregnancy. Thus, even when considered together, it is clear under either harmless error standard, the errors did not contribute to the verdict. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] ["before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"]; *People v. Watson* (1956) 46 Cal.2d 818, 836 ["a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)

## IV

### *Minor's Electronic Search Condition Is Constitutionally Overbroad*

Minor argues the electronic search condition is invalid under *People v. Lent* (1975) 15 Cal.3d 481 and constitutionally overbroad. The condition provides: "That [minor] submit his person, property, vehicle, residence, and any parcel under his control to warrantless search at any time, by any peace officer or probation officer with or without probable cause; and that he provide any password or combination necessary to access any electronic device or service during the warrantless search process."

10

" ' "A juvenile court enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile." ' [Citation.] 'The reasonableness and propriety of the imposed condition is measured not just by the circumstances of the current offense, but by the minor's entire social history.' [Citation.] [¶] Though broad, the juvenile court's discretion has limits. Under *Lent*, which applies to both juvenile and adult probationers, a probation condition is invalid if it ' " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " [Citations.] "This test is conjunctive -- all three prongs must be satisfied before a reviewing court will invalidate a probation term." ' " (*In re Alonzo M.* (2019) 40 Cal.App.5th 156, 164-165.)

The court imposed the electronic search condition because minor's criminal conduct arose out of romantic communications sent through social media and other electronic means between minor and the victim. Those electronic communications led to consensual and then nonconsensual sexual contact. The court made a point of stating to minor that his time on probation was for the purposes of correcting the faulty assumptions he had regarding consent and learning how to lawfully navigate sexual relationships. Because the use of electronic communications had a relationship to minor's crime, the court did not abuse its discretion under *Lent*, even in light of *In re Ricardo P.*, *supra*, 7 Cal.5th at page 1116, which exclusively concerned the third prong of the *Lent* test.

Related to but distinct from a *Lent* analysis, "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890; see *In re Victor L.* (2010) 182 Cal.App.4th 902,

11

910 ["conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation"].) Although there must be a reasonably close fit between the condition and its purpose, we must bear in mind "that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

We agree with minor the electronic search condition that orders him to "provide any password or combination necessary to access any electronic device or service during the warrantless search process" is not narrowly tailored to achieve the purpose of the condition. The court imposed the condition as a means of teaching minor how to lawfully navigate sexual relationships. As worded, the electronic search condition permits police and probation officers to search all of minor's electronic devices, applications, and communications with anyone for any purpose. This would include minor's medical records, financial records, and communications wholly unrelated to his offense or future criminality. It is also far broader than necessary to ensure minor's compliance with his other probation conditions, such as the pornography and alcohol prohibitions, as well as the no-contact order. Accordingly, the electronic search condition is overbroad as imposed and must be stricken.

V

*One Of Minor's Pornography Conditions Is Vague*

Minor argues one of his conditions related to pornography is vague and overbroad. The condition provides: "That [minor] shall not possess, view or listen to any pornographic material as defined by a Sex Offender Treatment Program or Probation Officer." The People agree the condition is vague and requires a scienter element. Otherwise, the People believe the condition is constitutional.

Minor's vagueness argument is addressed in *People v. Turner* (2007) 155 Cal.App.4th 1432, *People v. Pirali* (2013) 217 Cal.App.4th 1341, and *In re D.H.* (2016) 4

12

Cal.App.5th 722. In essence, minor argues that not only should the condition contain a scienter requirement but also should define the term pornography. *Pirali* and *Turner* were concerned with scienter.

In *Pirali*, the appellate court found "the probation condition d[id] not sufficiently provide defendant with advance knowledge of what is required of him," and for the court to determine whether the condition has been violated. (*People v. Pirali*, *supra*, 217 Cal.App.4th at p. 1352.) "The fact that the probation officer may deem material sexually explicit or pornographic *after* defendant already possesses the material would produce a situation where defendant could violate his probation without adequate notice." (*Ibid*.) The court therefore modified the condition to state: " 'You're ordered not to purchase or possess any pornographic or sexually explicit material, having been informed by the probation officer that such items are pornographic or sexually explicit.' " (*Id*. at p. 1353.)

Similarly, in *Turner* the court modified the pornography condition to include a scienter requirement. Thus, the condition as modified read: " 'Not possess any sexually stimulating/oriented material having been informed by the probation officer that such material is inappropriate and/or patronize any places where such material or entertainment in the style of said material are known to be available.' " (*People v. Turner*, *supra*, 155 Cal.App.4th at p. 1436.) The court in *Turner* also concluded that, as modified, the condition was not overbroad because "[p]reventing the possession of sexually oriented materials by persons such as defendant[, who was convicted of possessing child pornography and indecent exposure,] promotes public safety and his rehabilitation." (*Id*. at p. 1437.)

Unlike the courts in *Pirali* and *Turner*, the court in *D.H.* addressed the vagueness of the term pornography. (*In re D.H.*, *supra*, 4 Cal.App.5th at pp. 728-729.) The court in *D.H.* observed that "*Pirali* and *Turner* provide little guidance . . . because both decisions were concerned with the lack of notice created by leaving the prohibited category's definition to the probation officer." (*In re D.H.*, at p. 728.) In *D.H.*, a 16-year-old minor

13

who admitted to indecent exposure on a public bus was placed on probation. (*Id.* at p. 724.) As a condition of probation, the court ordered as follows: " 'You're not to access pornography on any electronic devices or otherwise.' " (*Id*. at p. 725.) The minor appealed, arguing the pornography condition was vague. (*Id*. at pp. 727-728.) The appellate court agreed with the minor that the term " 'pornography' " was inherently vague and directed the trial court on remand "to define more precisely the material the court intends to prohibit." (*Id*. at p. 729.)

Minor argues the problem presented in *Pirali* and *Turner*, as well as the problem presented in *D.H.* are present in his case. We agree with the People that *Pirali* and *Turner* are all that is needed to resolve minor's case. Unlike *D.H.*, the challenged condition only pertains to pornographic material defined by minor's sex offender treatment program and probation officer, and not to materials minor knowingly possesses. (*In re D.H.*, *supra*, 4 Cal.App.5th at p. 725.) Indeed, the court notified minor of the types of pornographic material he was precluded from possessing in a different pornography condition, which provided minor "not possess, view, or listen to any audio, video, pictorial or written material, depicting persons engaging in actual or simulated sexually explicit conduct, including genital-genital, oral-genital, anal-genital, or oral-anal, sexual intercourse; bestiality; masturbation, sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person." Because the challenged condition focused exclusively on materials minor's sex offender treatment program or probation officer defined as pornographic, *Pirali* and *Turner* control and a scienter requirement is all that is needed to correct the vagueness of the condition.

As to minor's assertion the condition is overbroad, we disagree. Impliedly, the definition of pornography as defined by the sex offender treatment program or probation officer could be broader than that defined by the court in the other pornography condition. But we cannot conclude in response to minor's facial challenge that there is no conceivable reason for minor's sex offender treatment program or probation officer to

define pornography broader than the court to achieve minor's rehabilitation. (See *In re Sheena K.*, *supra*, 40 Cal.4th at p. 885 [in a facial overbreadth challenge, the issue is whether the condition, in the abstract, and not as applied to the particular probationer, is insufficiently narrowly tailored to the state's legitimate interest in rehabilitation of probationers in all possible applications].) Minor argues his sex offender treatment program or probation officer could prevent him from viewing great works of art and several mainstream movies under the premise those materials are pornography. But that is not overbroad for purposes of achieving minor's rehabilitation. There may be situations where pornographic material not meeting the specific definition provided by the court would be detrimental to a minor's rehabilitation, especially in the context of learning to recognize consensual sexual behavior. Thus, while vague, the challenged pornography condition is not overbroad.

DISPOSITION

The disposition order is affirmed except for the provisions imposing an electronic search condition (condition No. 19) and pornography prohibition (condition No. 28), which are stricken. Minor's case is remanded so the juvenile court may consider whether to adopt an electronic search condition and pornography condition consistent with this opinion.


/s/
Robie, J.

We concur:


/s/
Hull, Acting P. J.


/s/
Murray, J.


15