Filed 12/13/24  P. v. Campos CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B330131 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. BA496857, BA497487, SA104410) |
| v. | |
| LUIS ALONSO JAIME CAMPOS, | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Terry Bork, Judge.  Affirmed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Luis Alonso Jaime Campos appeals from the trial court's orders revoking his probation in three cases and sentencing him to a total of five years eight months in prison. He argues the trial court abused its discretion in sustaining the prosecutor's hearsay objections to questions seeking testimony from Campos's employer that would have supported Campos's argument he was at work the day of the incident that led to the probation violations. He also argues the abstract of judgment erroneously lists one of his convictions as a violent felony. His first argument is correct, but the court's error was harmless. His second argument, as the People concede, is also correct. Therefore, we affirm the trial court's orders and direct the court to correct the error in the abstracts of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Campos Is Convicted of Committing Various Crimes and Is Placed on Felony Probation in Three Cases*

Campos was on felony probation for convictions he suffered after pleading no contest to charges in three separate cases. In the first case the court convicted Campos of grand theft of an automobile (Pen. Code, § 487, subd. (d)(1))[1] and burglary (§ 459). The court suspended imposition of sentence and placed Campos on probation for two years.

---

[1] Undesignated statutory references are to the Penal Code.

2

In the second case the court convicted Campos of transporting, importing, or selling a controlled substance (methamphetamine) (Health & Saf. Code, § 11379, subd. (a)). The court suspended imposition of sentence and placed Campos on probation for two years.

In the third case the court convicted Campos of burglary (§ 459), making a criminal threat (§ 422), and fleeing or attempting to elude a pursuing peace officer (Veh. Code, § 2800.2, subd. (a)). The court imposed and suspended execution of a four-year sentence for Campos's burglary conviction and imposed concurrent terms for the other two (misdemeanor) convictions. The court placed Campos on probation for two years.

The terms and conditions of Campos's probation in all three cases included not using or threatening to use force or violence against anyone.

B. *Campos Violates the Terms and Conditions of His Probation*

On February 9, 2023, while Campos was on probation for all three cases, Daniel Issak was working as a property manager and went to check on one of his vacant residential properties. When he arrived in the afternoon between 3:30 p.m. and 4:00 p.m., he found Campos, along with another man and a woman, inside the house. The three people left the house and came outside, where Campos confronted Issak in the street and indicated he wanted to fight.

Campos said that the property was in his gang's territory and that he could provide protection. Issak said he could take care of the property himself. Campos was wearing a pouch or crossbody bag across his chest, and he unzipped it to show Issak

3

a gun with a black handle. Issak became concerned for his safety. The two people with Campos restrained him and told him to relax. Issak left.

But before he did, he took pictures of Campos and the two people with him. When he called the police four days later, on February 13, 2023, he gave the pictures to the police. Issak also identified Campos in a six-pack photographic lineup. Issak testified he was "100 percent certain," both at the police station when he identified Campos and at trial, Campos was the individual who threatened him with a gun on February 9, 2023.

Campos denied that he was at the property on February 9, 2023 or that he ever met Issak. Campos testified at the probation violation hearing he was at a construction site, working as a security guard, from 3:00 p.m. to 11:00 p.m. on that date.

Campos called Jose Rivas, who testified Campos worked for him as a security guard at three locations: a construction site, a marijuana dispensary, and a gentlemen's club. Rivas testified that on February 9, 2023 Campos was scheduled to work at the construction site from 3:00 p.m. to 11:00 p.m., his usual shift, although Rivas could not say where Campos was every minute of that eight-hour period. Rivas stated that Campos was supposed to text him at the beginning of a shift and at the end of a shift and that Campos did so on February 9, 2023. Rivas testified that if one of his security guards was missing, he would get a call from the client. He also said he would not know if Campos had left the construction site during his shift.

4

C. *The Trial Court Finds Campos Violated the Terms and Conditions of His Probation and Sentences Him*

On May 18, 2023 the People filed a motion asking the court to revoke Campos's probation in all three cases. The People alleged that on February 9, 2023, after Issak confronted Campos for trespassing, Campos said he was a gang member and "this was his hood," brandished a firearm, and threatened to kill Issak.

The trial court found the People proved by a preponderance of the evidence Campos violated the terms and conditions of his probation in all three cases. The court found that Issak "had a significant opportunity to see [Campos] close up and in person in broad daylight on a public street, heard him speak [and] saw him" and that Issak "had a significant basis to enable him to make an eyewitness identification," despite what the court called the "frailties and foibles that are involved with eyewitness identifications." The court also found credible Issak's testimony and his identification of Campos in the six-pack photographic lineup. The court found that Campos's testimony was "less credible" and that Rivas's testimony was not "credible or compelling." The court ruled Campos violated the terms and conditions of his probation in all three cases by brandishing a weapon, using extortion to scare Issak, converting property, trespassing, "or any one of the four."

At sentencing the court stated that it considered "the violation conduct to be exceedingly dangerous and threatening" and that the violation occurred while Campos was on probation in three cases. The court ordered into effect the four-year prison term previously imposed in one of the cases, plus terms of one year and eight months, respectively, in the other two cases,

5

for an aggregate prison term of five years eight months. Campos timely appealed.

## DISCUSSION

A. *The Trial Court Erred in Sustaining the Prosecutor's Hearsay Objection, but the Error Was Harmless*

Campos raises one argument regarding the merits of the trial court's ruling he violated the terms of his probation. It arises out of this exchange during the hearing, while Rivas, Campos's employer, was testifying:

"Q: If an employee was to leave a job site for an extended period of time, would you expect that there would be some pushback from the client?

"[The prosecutor]: Objection. Calls for hearsay and calls for speculation.

"The Court: Sustained.

"Q: In the past, has it been your experience that if there's an issue with [a] security guard that . . . you would get a call from the client?

"[The prosecutor]: Objection. Calls for hearsay. Relevance. Speculation.

"The Court: It does call for hearsay, and the answer is stricken."

Campos argues that his "primary defense regarding the probation violations was that he was not at the incident location and [Issak] misidentified him as the person who threatened him and displayed the firearm." Campos called Rivas to corroborate Campos's testimony he was not at Issak's property on February 9, 2023. Though Rivas admitted he could not say

6

where Campos was at all times on that date, counsel for Campos tried to establish with these questions that, "if an assigned security person did not show up at an assigned location, or for some reason left the location, it was customary for the client—the person or entity that controlled the location—to contact him to report the absence." Not direct, or even the strongest, evidence Campos did not leave his job at the construction site on February 9, 2023, but circumstantial evidence with some probative value on that point.

The trial court's rulings sustaining hearsay objections to these questions were error. The questions did not call for a statement, let alone an out-of-court statement. (See *People v. Valencia* (2021) 11 Cal.5th 818, 831 ["Hearsay is an out-of-court statement offered to prove the truth of its content."].) The questions did not ask Rivas to repeat an out-of-court statement by a client. They asked only whether Rivas would receive some kind of communication from a client if an employee left the job site or had some kind of issue.[2]

The trial court's error, however, was harmless. We review the erroneous exclusion on a hearsay objection for prejudice under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Fudge* (1994) 7 Cal.4th 1075, 1104; see *People v. Bradford* (1997) 15 Cal.4th 1229, 1325 [any error in the trial court's exclusion of statements "not made inadmissible by the hearsay rule" is reviewed for prejudice under *Watson*].) Where, as here, the "trial

---

[2]    To the extent the trial court sustained the prosecutor's objection to the first question on the ground it called for speculation, such a ruling was also error. Rivas had personal knowledge of when he had problems with his employees or when clients complained.

court's erroneous ruling is not a refusal to allow a defendant to present a defense, but only rejects certain evidence concerning the defense, the error is nonconstitutional and is analyzed for prejudice under *Watson*," which is that "the judgment should be reversed only if it is reasonably probable that defendant would have obtained a more favorable result absent the error." (*People v. Garcia* (2008) 160 Cal.App.4th 124, 133.)

The evidence Campos threatened Issak with violence on February 9, 2023 was strong. (See *People v. Homick* (2012) 55 Cal.4th 816, 872 [any error in the admission of hearsay testimony "was harmless in light of the strong evidence of defendant's guilt"]; *People v. Houston* (2005) 130 Cal.App.4th 279, 296 [error in ruling on the admissibility of hearsay evidence is harmless where the evidence of guilt is overwhelming].) Issak had a clear, lengthy, and close-up view of Campos on February 9, 2023, took a picture of him at the property, and identified him in a six-pack photographic lineup and at the probation violation hearing. Issak testified he was 100 percent certain both times the person who threatened him and brandished a gun on February 9, 2023 was Campos. And Rivas admitted he did not know where Campos was most of the time on that date. It is not reasonably probable that, had the trial court allowed Rivas to answer the questions, the court would not have found Campos violated the terms and conditions of his probation.

Moreover, counsel for Campos was able to get the erroneously excluded testimony into evidence at another point in Rivas's testimony:

"Q:     And you . . . would expect if the security guard is missing that you would get a call from the client?

"A:  Correct.  And—

"[The Prosecutor]:  Objection.  Calls for speculation.  Calls for hearsay.

"The Court:  Overruled.

"Q:     Is that correct?

"A:     Correct."

This testimony allowed counsel for Campos to make the same point he wanted to make with the excluded evidence:  Had someone noticed Campos was missing from work between 3:00 p.m. and 11:00 p.m. on February 9, 2023, Campos's employer would have learned about it.  (See *People v. Ng* (2022) 13 Cal.5th 448, 553 [error in excluding a witness's testimony did not prejudice the defendant "because the evidence defendant now challenges was admitted through another witness"]; *People v. Harris* (2013) 57 Cal.4th 804, 846-847 [any error in excluding testimony was harmless where the jury heard evidence on the same issue]; *People v. Lee* (1990) 219 Cal.App.3d 829, 840 [any error "in excluding the response to [a] specific question" was harmless because the response "came into evidence through a previous question"]; *People v. Helton* (1984) 162 Cal.App.3d 1141, 1146 [any error in excluding hearsay evidence was harmless where the excluded evidence was "merely cumulative of properly admitted evidence"]; see also *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 415 [any error in admitting a hearsay statement was harmless where another witness's "statements conveyed the same information"]; *People v. Thomas* (2007) 150 Cal.App.4th 461, 464 ["The trial court erred by admitting one hearsay statement, but the error was harmless

9

because its content was the same as other properly admitted evidence."].)

> B. *The Trial Court Should Correct the Abstracts of Judgment To State Campos's Burglary Conviction Is Not a Violent Felony*

Campos argues, the People concede, and we agree the abstracts of judgment erroneously state that, in the case where the trial court imposed the four-year term for burglary, the burglary conviction was for a violent (as well as a serious) felony. Although Campos was convicted of first degree burglary, he did not admit the allegation a person was present during the burglary, which meant his conviction for burglary was not for a violent felony (though it was for a serious felony). (See *People v. Mani* (2022) 74 Cal.App.5th 343, 367, fn. 7 ["residential burglary when someone is home is a violent felony offense"]; *People v. Bedolla* (2018) 28 Cal.App.5th 535, 541 [first degree burglary is a violent felony "where another person, not an accomplice, was present during the burglary's commission"]; cf. *People v. Johnson* (2015) 61 Cal.4th 674, 680 [first degree burglary is a serious felony].) The trial court should correct the three abstracts of judgment to reflect that Campos's burglary conviction was a serious, but not a violent, felony.

## DISPOSITION

The orders are affirmed.  The trial court is directed to prepare amended abstracts of judgment in all three cases to state Campos's conviction for burglary was for a serious, but not a violent, felony and to send the correct abstracts of judgment to the Department of Corrections and Rehabilitation.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.